JACOB MICHELS v. HENRY STORK.

*Conclusiveness of return of service.*

The return, by an officer, of service of process is conclusive, in any collateral proceeding, upon the parties to the suit in which the process issued.

Error to the Superior Court of Detroit. (Chipman J.) Oct. 18.—Dec. 21.

TROVER. Defendant brings error. Reversed.

*W. B. Jackson* and *Conely, Maybury & Lucking* for appellant. An officer's return is conclusive as between the parties unless in a proceeding in the case itself or an action against the officer for making false return: *Brown v. Davis* 9 N. H. 76; *Bean v. Parker* 17 Mass. 600; *Pullen v. Haynes* 11 Gray 379; *Bamford v. Melvin* 7 Me. 14; *Case v. Redfield* 7 Wend. 398; *Putnam v. Man* 3 Wend. 202; *Morse v. Smith* 47 N. H. 477.

. *Browse T. Prentis* for appellee.

COOLEY, J. The only question important to the decision of this case is, whether an officer's return of service of process is conclusive upon the parties to the suit in which the process issued, when brought in question in some collateral suit or proceeding.

Michels, it appears, on August 10, 1874, procured an attachment from a justice of the peace against the chattels of Stork, and put it into the hands of Constable John Gnau for service. The constable made return that by virtue of the writ he did, on the 10th day of August, 1874, seize the goods and chattels of the defendant mentioned in the inventory annexed thereto, and that on the 12th day of August, 1874, he served upon the defendant a copy of the writ and inventory, duly certified by him, by leaving the same at his usual place of abode with his wife, a person of

suitable age and discretion, whom he informed of its contents. What further was done in the attachment suit does not appear.

The present action is trover for the conversion of the property which the constable returned that he had attached. The plaintiff claims that the constable did not attach the goods at all, but that the officer and the defendant together took them away, and that they were immediately left by the officer with the defendant, and plaintiff never saw them afterwards. The officer was a witness in the case, and testified to having attached the goods and handed them over to defendant for safe-keeping; and the plaintiff in his testimony admitted that the officer told him there was an attachment on the goods at the time he and the defendant took them. It was contended, however, that the constable was not acting in good faith, and that the seizure of the goods was a mere pretense to get them into the possession of defendant.

The question in this Court arises upon the following instructions of the trial judge:

"If Mr. Gnau made a levy upon those goods, seized them under an attachment, and they were in his possession, and he delivered up the possession of them afterwards to Michels, if that is all that took place, then Michels is not liable; he would not be liable in trover, nor would he be liable in trespass. On the other hand, if this was a mere scheme between Gnau and Michels to get possession of those goods, and the writ of attachment was not levied in good faith upon the goods, but the mere determination was to get the goods in Michels' possession, and Michels and Gnau understood it and did it for that purpose and no other purpose, then Michels would be liable.

"So you see, gentlemen, it is a matter of a good deal of importance to determine, in the first place, whether Mr. Gnau really served this writ of attachment on those goods. It does not make any difference whether he pursued the proper steps or not, because Michels would not be responsible for the conduct of the officer in that regard, unless he was an active participant in it and directed the officers to do that which was against the law.

"Now, Mr. Gnau's duty undoubtedly was, when he seized

those goods, to take them in his possession or put them in the possession of somebody who acted as his agent. The object of attachment is to seize the goods and have them forthcoming at the end of suit, provided judgment is taken.

" Now, if he put an attachment on the goods, really seized them, and you find the evidence shows that, that is the end of this case. I don't care what was done afterwards ; sufficient for the purposes of this case, neither the action of trespass nor of trover would lie. But if he and Michels went there and took possession of those goods for the purpose of giving them to Michels, and not for the purpose of levying the attachment, and it was not levied, then, never mind what the officer returned, Michels would be liable. That is all there is in it.

" Now, you are to determine whether Mr. Gnau did really levy an attachment on that property or not. If he did, that ends the suits. You are to determine, in the second place, if he did not levy an attachment, whether he and Michels went there to get the goods into Michels' possession simply for that purpose, and not for the purpose of levying the attachment. If Michels thought that Gnau had attached the goods, and Gnau had the proper papers to attach them —and for the purposes of this case I charge you that he did have—then Michels would not be responsible; that is, if he was acting in good faith in the transaction.

" You see the question is a very simple one. It all turns on whether Michels and Gnau went there for the purpose of levying that attachment or whether they went there for the purpose of giving Michels possession of those goods, without any regard to the attachment.

" I charge, as a matter of law, it makes no difference what the officer returned, so far as Michels was concerned ; Michels had no direction or supervision over him in making a return ; if he never made any return on that attachment at all, that would not hold Michels responsible. The only part or object that any of these matters have in this suit is as coloring the conduct of Michels and the officer together. But if Gnau had levied that attachment without making any return, Michels would not be responsible, because he has no control over the officer. But it is for you to determine, as a matter of fact, whether an attachment was really put on."

The purport of this instruction is, that the return is to be taken as prima facie evidence of the facts stated in it,

but that it may be contradicted by parol evidence, and if the jury are convinced by such evidence that the return is untrue, they are at liberty to disregard it. And the jury in this case did disregard it, and gave judgment for the plaintiff, grounding their action upon a finding that no attachment had in fact ever been made.

Had the suit been brought against the officer for a false return, it is conceded that the plaintiff would have been at liberty to show the falsity of the return by any evidence fairly tending to show it. He might do this also by affidavit on a motion in the same suit to set aside the return ; and this is not an uncommon proceeding when the truth of the return is disputed. *Chapman v. Cumming* 17 N. J. 11; *Carr v. Commercial Bank* 16 Wis. 50; *Bond v. Wilson* 8 Kan. 228; s. c. 12 Am. Rep. 466. It has also been held that the officer's return may be contradicted in equity in a proceeding instituted to set aside a judgment founded upon it. *Owens v. Ranstead* 22 Ill. 161; *Newcomb v. Dewey* 27 Iowa 381; *Bridgeport Savings Bank v. Eldredge* 28 Conn. 556; *Bell v. Williams* 1 Head 229; *Ridgeway v. Bank of Tennessee* 11 Humph. 523. See *Fowler v. Lee* 10 G. & J. 358; s. c. 32 Am. Dec. 172; *Leftwich v. Hamilton* 9 Heisk. 310. It is also held that the officer's return is not conclusive as to facts stated therein which he must learn by inquiry of others; as, for example, that the person upon whom the process was served was the incumbent of a certain corporate office, such as that of president of a bank. *St. John v. Tombeckbee Bank* 3 Stew. 146 ; *Rowe v. Table &c. Co.* 10 Cal. 441; *Wilson v. Spring &c. Co.* 10 Cal. 445. See *Chapman v. Cumming* 17 N. J.11; *Sanford v. Nichols* 14 Conn. 374; and compare *State v. O'Neill* 4 Mo. App. 221. And a person not a party or privy to the proceeding in which the return is made, is never concluded by it from showing the real fact. *Nall v. Granger* 8 Mich. 450. And where suit is brought upon a foreign judgment, it seems to be competent to disprove jurisdiction by showing, in contradiction of the officer's return, that no service was made upon the party defendant.

*Knowles v. Gas-light &c. Co.* 19 Wall. 58; *Thompson v. Whitman* 18 Wall. 457; *Carleton v. Bickford* 13 Gray 596; *McDermott v. Clary* 107 Mass. 501; *Gilman v. Gilman* 126 Mass. 26; s. c. 30 Am. Rep. 646; *Bowler v. Huston* 30 Grat. 266; s. c. 32 Am. Rep. 673; *Lowe v. Lowe* 40 Iowa 220.

None of these cases are analogous to the one before us; but it must be conceded that there are cases which are directly in point, and which tend to support the instructions. *Cunningham v. Mitchell* 4 Rand. 189; *Butts v. Francis* 4 Conn. 424; *Watson v. Watson* 6 Conn. 334; *Hutchins v. Johnson* 12 Conn. 376; *Smith v. Law* 5 Ired. 197; *Joyner v. Miller* 55 Miss. 208; *Abell v. Simon* 49 Md. 318; *Gary v. State* 11 Tex. App. 527; *Dasher v. Dasher* 47 Ga. 320; *Elder v. Cozart* 59 Ga. 199; *Jones v. Commercial Bank* 5 How. (Miss.) 43; s. c. 35 Am. Dec. 419. The Georgia cases appear to be based upon a statute. If it were important now to examine the other cases critically, some of them might perhaps be distinguished, but their tendency is unquestionably as above stated.

On the other hand, the ruling of this Court in *Green v. Kindy* 43 Mich. 279 is distinctly adverse to the instructions. It was there held that the return of a sheriff to a writ of replevin, in which he certified that the plaintiff in the suit had not filed a forthcoming bond, was conclusive upon the parties, and would preclude any such bond being set up. This case, which seems to have been overlooked on the trial, is in entire accord with the English authorities. *Anonymous* Lofft 372; *Bentley v. Hore* 1 Lev. 86; *Flud v. Penington* Cro. Eliz. 872; *Rex v. Elkins* Burr. 2129; *Harrington v. Taylor* 15 East 378; *Goubot v. De Crouy* 2 Dowl. P. C. 86. But it is also in accord with the great preponderance of authority in this country. In New York the doctrine was strongly asserted in a case in which a constable had served his own process, which the law of that state allowed. "The constable's return," says the court, "is conclusive against the defendant in the cause in which it is made. He cannot traverse the truth of it by a plea in

abatement or otherwise; but if it be false, the defendant's remedy is in an action against the constable for a false return." See *Allen v. Martin* 10 Wend. 300; *Boomer v. Laine* 10 Wend. 525. In Pennsylvania it was said in an early case: "It is a well-settled principle, applicable to every case, that credence is to be given to the sheriff's return; so much so, that there can be no averment against it in the same action. A party may make an averment consistent with the sheriff's return, or explanatory of its legal bearing and effect, where the return is at large; but he cannot aver a matter directly at variance with the facts stated in return, and contradictory to it, and showing it to be false. If a party be injured by the false return of the sheriff, his remedy is by action on the case against the sheriff who makes it." *Knowles v. Lord* 4 Whart. 500; s. c. 34 Am. Dec. 525. Like decisions were made in *Zion Church v. St. Peter's* 5 W. & S. 215; *Diller v. Roberts* 13 S. & R. 60; and the doctrine is recognized in *Paxson's Appeal* 49 Penn. St. 195. It has also been distinctly and strongly affirmed in Massachusetts cases. *Slayton v. Chester* 4 Mass. 478; *Bott v. Burnell* 11 Mass. 163; *Winchel v. Stiles* 15 Mass. 230; *Bean v. Parker* 17 Mass. 591; *Campbell v. Webster* 15 Gray 28; *Dooley v. Wolcott* 4 Allen 406. In New Hampshire it is said: "As between the parties, the return of the sheriff is conclusive upon all matters material to be returned; and cannot be contradicted by such parties or their privies, or by bail, endorsers, or others, whose rights or liabilities are dependent upon the suit. The remedy for a false return is by suit against the sheriff, and not by defeating the proceedings in which such return is made." *Bolles v. Bowen* 45 N. H. 124, following *Brown v. Davis* 9 N. H. 76; *Wendell v. Mugridge* 19 N. H. 112; *Angier v. Ash* 26 N. H. 99; *Messer v. Bailey* 31 N. H. 9; *Clough v. Monroe* 34 N. H. 381. To the same purport are the Kentucky cases. *Trigg v. Lewis' Ex'rs.* 3 Litt. 129; *Smith v. Hornback* 3 A. K. Marsh. 379. In Vermont and Maine the cases in Massachusetts have been followed with approval. *Eastman v. Curtis* 4 Vt. 616; *Swift v. Cobb* 10 Vt. 282;

*Wood v. Doane* 20 Vt. 612; *Stratton v. Lyons* 53 Vt. 130; *Gilson v. Parkhurst* 53 Vt. 384; *Stinson v. Snow* 10 Me. 263; *Fairfield v. Paine* 23 Me. 498; s. c. 41 Am. Dec. 351. The decisions in Indiana are to the same effect. *Rowell v. Klein* 44 Ind. 290; *Splahn v. Gillespie* 48 Ind. 397; *Stockton v. Stockton* 59 Ind. 574; *Clark v. Shaw* 79 Ind. 164. So are those in North Carolina, Arkansas, Minnesota and Nebraska. *Hunter v. Kirk* 4 Hawks 277; *Rose v. Ford* 2 Ark. 26; *Tullis v. Brawley* 3 Minn. 277; *Johnson v. Jones* 2 Neb. 126. In Illinois the English rule has been recognized: *Fitzgerald v. Kimball* 86 Ill. 396; though it is said some exceptions are made to it in the furtherance of justice in that state. *Ryan v. Lander* 89 Ill. 554. What the exceptions are is not pointed out in that case; but in the subsequent case of *Hunter v. Stoneburner* 92 Ill. 75, 79, we have the following statement as the result of prior decisions: " It is in rare cases only, that the return of the officer can be contradicted, except in a direct proceeding by suit against the officer for a false return. In all other cases, almost without an exception, the return is held to be conclusive. An exception to the rule is, where some other portion of the record in the same case contradicts the return, but it cannot be done by evidence dehors the record."

These citations are sufficient, and more than sufficient, to justify the previous ruling by this Court. It follows that the instruction complained of was erroneous, and it must be reversed with costs and a new trial ordered.

GRAVES, C. J. and SHERWOOD, J. concurred.

CAMPBELL, J. dissenting. As I understand the controversy in this case, the dispute was not whether the constable took the property, but whether the taking was not by process designed by the parties as a mere pretext for getting possession, and not for any legitimate purpose. The case is one of abuse of process for illegal purposes, in which it was claimed, and the jury must have found, that Michels was active throughout as connected with the constable. I do not

understand that a fraudulent use of process to get possession of property, and for no other purpose is, under any circumstances, a justification to any person concerned in the fraud.

I think the court committed no error, and that the judgment should be affirmed.