| | |
|---|---|
| 80 | 589 |
| 88 | 1039 |
| 80 | 589 |
| 90 | 268 |
| 90 | 362 |
| 80 | 589 |
| 92 | 228 |
| 80 | 589 |
| 98 | 634 |
| 80 | 589 |
| 102 | 342 |
| 80 | 589 |
| 110 | 053 |
| 110 | 655 |

## Wytheville.

ROANOKE LAND AND IMPROVEMENT CO. V. KARN & HICKSON.

SAME V. SNEAD & WINSTON.

JUNE 25TH, 1885.

1. APPELLATE COURT—*Record—Certificate.*—Nothing, not made part of the record by bill of exceptions, or by order of the court, can be regarded as such by the appellate court. The clerk can add nothing to the record, and his certificate that a deposition or other paper copied by him, was the evidence whereon the judgment was founded, is no part of the record.

2. IDEM—*Pleadings—Demurrer—Jeofails.*—Judgment will not be reversed for defect, imperfection, or omission in the pleadings, unless in court below there was a demurrer. Code 1873, ch. 177, § 3. But a failure to state any cause of action at all, is not cured by the statute.

3. MECHANICS' LEIN—*Sub contractor—Owner*—In suit of sub-contractor against owner for materials furnished general contractor, it is unnecessary to allege that any part of the price agreed to be paid remained due to latter from owner when notice was given. Acts 1874-5, p. 437, § 5.

4. IDEM—*Notice.*—The mechanics' lien law as amended by act of 1874-5, p. 437, § 5, does not require sub-contractor to notify owner at the time the labor is done or the materials are furnished: it is sufficient if the notice be given at any time thereafter, and within twenty days after the building has been completed, or the work otherwise terminated. But he is not obliged to wait until other work on the building, with which he has no concern, is performed, before he gives his notice.

Error to two judgments of circuit court of Roanoke county, rendered 9th October, 1884, the first in the action of assumpsit brought by Karns & Hickson against the Roanoke Land and

Improvement Company, and the second in the action of assumpsit brought by Snead & Winston against the same company, for materials furnished by the plaintiffs respectively, as sub-contractors, to Julius C. Holmes & Co., as general contractors, to be used by them in constructing a certain building owned by the said company. The judgments were for the plaintiffs respectively, and to these judgments the said company obtained from one of the judges of this court, writs of error; which writs were heard together.

Opinion states the case.

*S. Griffin*, *J. Allen Watts* and *Wm. Gordon Robertson*, for the plaintiff in error.

*Burks & Burks* and *W. W. Larkin*, for the defendants in error.

LACY, J., delivered the opinion of the court.

The defendants in error instituted their action of assumpsit in the circuit court of Roanoke county, in September, 1883, against the plaintiff in error. The action was in each case for a certain sum claimed to be due them, on account of certain materials furnished by them to a certain firm of contractors, to-wit, Julius C. Holmes & Co., to be used by them in the construction of a certain building of which the plaintiff in error was the owner.

Both parties having waived a jury, the issue, both as to matters of fact and as to matters of law, was decided by the judge in each case, who rendered judgment for the defendants in error, Karn & Hickson, for $1000 and costs, and for the defendants in error, Snead and Winston, $1002.73 and costs.

The plaintiff in error in each case moved the court to set aside the said judgments respectively, as being contrary to the law and the evidence, which said motion was overruled in each case. There was no exception taken at the trial in either case, but the plaintiff in error copied the record in each

case, and presented his petition in each case for a writ of error, on account of errors to be found on the face of the plaintiff's declaration in each case, which was awarded in each case on the 10th day of December, 1884, by one of the judges of this court.

The case must be heard and considered in this court upon the errors apparent upon the face of the record. In *White* v. *Toncray*, 9 Leigh, Judge Tucker says: "The record is made up of the writ (for the purpose of amending by if necessary); the whole pleadings between the parties; papers of which profert is made or oyer demanded, and such as have been specially submitted to the consideration of the court by a bill of exceptions, a demurrer to evidence, or a special verdict, or are inseparably connected with some paper or evidence so referred to. These, with the several proceedings at the rules, or in court, until the rendition of the judgment, constitute the record in common law suits, and no others." *Mandeville* v. *Penn*, 6 Call, 78, 83; cited and approved in *White* v. *Toncray*, 9 Leigh, 351.

The record of a trial, in action at law, does not of itself contain the incidents which invest such occasions frequently with a powerful dramatic interest. It takes no notice of the rulings of the court in admitting or excluding evidence, nor of instructions as to the law given by the court to the jury, much less of the testimony itself, or of the arguments of counsel. It confines itself to a brief abstract, setting forth nothing but the pleadings, the issue, the impaneling of the jury, or the waiver of the jury, and the submission of matters of fact to the court, the verdict and the judgment, or the judgment alone, where the jury is waived.

If the court is supposed to err in any part of its conduct during the trial, in admitting or excluding evidence, in the instructions it gives to the jury as to the law, or otherwise, the record is made to embrace so much of the proceedings as will enable an appellate court to understand, and if need be correct, the ruling and judgment of the court below, by means of a bill of

exceptions, which is a statement attested by the signature of the judge of the action of the court and of the circumstances which attended it.

The whole object of a bill of exceptions being *to exhibit* upon *the record* the supposed mistakes of the court which tries the cause, which otherwise do not appear upon the record, and cannot be brought before the appellate court to be there reviewed and corrected if erroneous.

At common law no such device as a bill of exceptions existed, so that if one were aggrieved in the particulars indicated he was without remedy. It was first allowed in England by statute Westm. II, 13 Edward I, C. 31, which has in substance been enacted in Virginia, our statute providing that, in the trial of any case at law, in which an appeal, writ of error or *supersedeas* lies to a higher court, a party may except to any opinion of the court, and tender a bill of exceptions, which (if the truth of the case be fairly stated therein) *the judge shall sign, and it shall be a part of the record.* If no such exceptions are taken to any supposed errors of the court which tries the case, these acts are not in the record, and cannot appear in the transcript thereof, and the party aggrieved remains as at common law without relief. 4 Min. Inst. 728–9. And this applies to the action of the court in refusing to set aside the judgment, and grant a new trial, because the same is contrary to the law and the evidence. The evidence cannot be reviewed by the appellate court, because it is not in the record, and is not made a part by bill of exceptions in any form, and a deposition taken in such case is not a part of the record, although copied in the transcript and certified by the clerk; it is not the province of the clerk to add anything to the record. *Cunningham* v. *Mitchell*, 4 Rand. 189; *Bowyer* v. *Chestnut*, 4 Leigh, 1.

The deposition filed in the case of Karn & Hickson, and certified by the clerk, and the affidavit in the case of Snead & Winston, the notices in each case copied and certified by the clerk, cannot be considered by this court. They are not made

a part of the record by the court, and it is not the province of the clerk to make anything a part of the record; his province is to copy the record as it is. In *Cunningham* v. *Mitchell*, Judge Green says: "The certificate of the clerk that these papers were the evidence upon which the judgment was founded, cannot be received as a part of the record. His certificate to that effect can have no more effect than that of any other individual. He can certify that such records exist in his office, but not what use was made of them. That ought to have been shown by the record; and it was the duty of the party wishing to avail himself of the fact *to have made it a part of the record.*" *Cunningham* v. *Mitchell*, *supra*, and *Preston* v. *The Auditor*, 1 Call, 471.

They are no part of the record, the clerk's certificate that they were read and filed cannot be received as evidence of that fact; for the appellate court can never know what took place at the trial by the clerk's certificate, that is not within his province.

The evidence produced upon the trial can only be known by its being spread upon the record by bill of exceptions, or by the certificate of the judge himself. The very object of the institution of bills of exceptions, was to enable the party to spread upon the record the matters that occurred at the trial; the improper evidence introduced, the instructions asked, the opinions given, and other matters of which the party could not otherwise avail himself in an appellate court. 2 Bac. Abr. 527; 2 Inst. 426. Unless this is done, the court sees nothing but the process, the pleadings, the verdict and the judgment (or the judgment when the jury was waived by the parties). The certificate of counsel affords no evidence of opinions expressed, or evidence given, nor the certificate of the clerk of the papers produced before the jury, or the depositions read in the cause. *Bowyer* v. *Chestnut*, 4 Leigh, 1. Opinion of Tucker, P.

Mr. Minor says, as to bills of exceptions: The record proper, is nothing but the formal allegations or pleadings on either side, the issue, the impaneling of a jury, the verdict and the

judgment, the mere lifeless skeleton as it were of the cause. The occurrences in court during the trial, all that impart life, animation and interest to the proceedings, are unnoticed. No vestige remains of the examination of the witnesses, the instructions and opinions of the court, or the behavior of the jury. But either party may catch these incidents "living as they arise," and fix them in the record, so that they may be perused on review by an appellate court (which can never look outside of the record for the history of the case); and if any error appears in the course of the proceedings that court may reverse the judgment, and take the steps necessary to correct the wrong done. 4 Min. Inst. 742.

All this is clear, both upon reason and authority.

Let us now proceed to consider the errors assigned upon the face of the record itself.

1st. That the plaintiffs' declaration contains no allegation that any part of the price agreed to be paid for the building remained unpaid and was due from the owner to the general contractor at the time the notice mentioned in the declaration was given.

2nd. That the notice required by the statute should be given at the time the materials were furnished, or certainly in a reasonable time thereafter; but the declaration merely states that notice was given before the building was completed, or the work thereon otherwise terminated, which is insufficient; while the statute provides that the affidavit stating the amount due to the sub-contractor and remaining unpaid, may be given at any time within twenty days after the building is completed or the work thereon otherwise terminated, it does not so provide with regard to the notice, but the evident intention of the statute is, that notice shall be given as soon as the materials are furnished.

3d. There is no liability on the owner to claims of sub-contractor until after the building is completed, or the work thereon otherwise terminated, for no liability arises until the

affidavit required by the 5th section is furnished, which, under said section, is required to be given "within twenty days after such building or other improvement is completed, or the work thereon otherwise terminated," and that the affidavit in this case is alleged to have been given at the same time as the notice, to wit: before tbe building was completed, or the work thereon otherwise terminated.

As to these assignments it may be observed, that the declaration was not demurred to in the circuit court.

These are alleged defects in the declaration. If they be such, why could they not have been availed of by demurrer? If so, can they constitute ground for the reversal of the judgment in this court?

The statute provides that no judgment shall be reversed on appeal for any defect, imperfection or omission in the pleadings, which could not be regarded on demurrer, or for any other defect which might have been taken advantage of on a demurrer, but was not so taken advantage of. Code 1873, ch. 177, sec. 3. The statute is held to cure a defective statement of a cause of action. The cause of action set forth in the declaration, arises under the provisions of chapter 115 of the Code, section 5, as amended in the Acts of 1874–5, and section 6 of said chapter. The statute would not validate a declaration which did not state any cause of action at all; it cures the error in a declaration which defectively states a good cause of action. 4 Min. Inst., 766; *Laughlin* v. *Flood*, 3 Munf., 273; *Boyle's adm'r* v. *Overby*, 11 Gratt. 202.

This statute controls and limits the powers of this court in reviewing errors alleged to exist, or appearing upon the face of the record. If the error was not excepted to in the mode prescribed by law, in the lower court, the judgment cannot be reversed in this court on account of such error.

These alleged errors not having been noticed or objected to in the court below by demurrer, the objection comes too late in

this court. And while we might well rest our views upon the foregoing, it may not be amiss to say, that it is not in this case necessary to rest our decision solely upon that ground.

As to the first assignment of error: There is no such requirement in the statute; and while it might be matter of defence depending upon evidence in some cases which might arise, it cannot be said to be an essential allegation in the statement of a case under the statute.

As to the second assignment of error, such a construction could not be given to the statute without adding words not in the law. The 5th section provides for notice, and for affidavit within twenty days after the building is completed. The 5th section of chapter 115 of the Code provides for notice of the *probable* value of the labor to be performed, or materials *to be* furnished. But the law as amended omits the words "probable" and the words *to be* before the words performed and furnished, as regards respectively the labor and the materials.

The amendment excludes the idea of notice in anticipation of either, and avoids any conjectured estimate, but provides for notice only of what has been done in either regard, and for affidavit within twenty days after the building has been completed, when the *labor has been performed,* and *the material furnished,* the notice may be given, and the affidavit furnished at any time within twenty days after the building has been completed; this is the limitation provided by the law; there is no other. When the labor has been performed, and the materials furnished, there is nothing in the statute which requires the sub-contractor to wait until other work on the building, with which he has no concern it may be, is performed, before he gives his notice; under the former law, he might have been held to the obligation to give the notice in anticipation of his labor and his delivery of materials, but under the amended law as it now stands, no such inference can be drawn, and if he follows the requirements of the statute, he is entitled to his action

against the owner of the building, on which he has performed labor, or for which he has furnished materials.

This sufficiently disposes of the third and last assignment of error, as well as of the second. There is no error in the record for which the judgment of the circuit court should be reversed, and the same must be affirmed in each case.

JUDGMENTS AFFIRMED.